UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ADAM ROEDER, individually, and on behalf of
all others similarly situated,

                        Plaintiff,

            -against-

COLLECTION BUREAU OF THE HUDSON
VALLEY, INC., a New York corporation,

                        Defendant.
------------------------------------------------------------X

**OPINION AND ORDER**

20 Civ. 06200 (JCM)

      Plaintiff Adam Roeder ("Plaintiff") brings this class action pursuant to the Telephone

Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, alleging that the Collection

Bureau of the Hudson Valley, Inc. ("Defendant") and/or its agents transmitted unwanted

solicitation telephone calls to Plaintiff and other class members using a prerecorded voice in the

four years prior to the filing of the complaint on August 6, 2020 (the "Complaint"). (Docket No.

1).  Defendant now moves pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for

dismissal based on lack of jurisdiction (the "Motion").[1] (Docket No. 26).  Plaintiff opposed the

Motion, (Docket No. 27), and Defendant replied, (Docket No. 28).  For the following reasons,

Defendant's motion to dismiss is denied.

## I.  BACKGROUND

      For purposes of resolving the instant motion, the Court accepts as true the facts set forth

in Plaintiff's Complaint. *See Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d

239, 243 (2d Cir. 2014).  Defendant is a private debt collection agency headquartered in

---

[1] This action is before the undersigned for all purposes on consent of the parties, pursuant to 28 U.S.C. § 636(c).
(Docket No. 13).

Newburgh, New York that conducts business throughout the United States. (Docket No. 1 ¶¶ 2, 14).  As part of that business, Defendant contacts consumers without their consent to collect on their debts using prerecorded voice messages. (*Id.* ¶¶ 15-16, 20).  Defendant also engages in a practice called "skip-tracing," wherein its agents "track down consumers with outstanding debts by calling [other] consumers who may . . . assist [Defendant] in reaching these delinquent consumers." (*Id.* ¶¶ 16, 21).

Plaintiff received three unwanted calls from Defendant on his cellular phone over the span of about five months. (*Id.* ¶¶ 24-34).  The first call occurred in or around December 2019 or January 2020. (*Id.* ¶ 24).  Although Plaintiff did not answer it, he "looked up" the phone number on the internet and identified it as belonging to Defendant. (*Id.* ¶¶ 24-25).  Therefore, he called Defendant's main office line and told the agent who answered that the call "was not for him." (*Id.* ¶¶ 25-26).  The second call occurred on May 26, 2020, and again, Plaintiff did not answer it. (*Id.* ¶ 28).  However, this time, Defendant left a prerecorded message in Plaintiff's voicemail box requesting that the recipient of the message contact Defendant's office about its debt collection efforts. (*Id.* ¶ 29).  Plaintiff received the final call on June 2, 2020, wherein he spoke with a live agent who identified herself as "with '[Defendant].'" (*Id.* ¶¶ 31-33).  Plaintiff told her that he had already asked for the calls to stop, and the agent apologized and advised she would remove his phone number from Defendant's system. (*Id.* ¶ 33).  Plaintiff never provided his cellular phone number to Defendant or otherwise consented to receive such calls. (*Id.* ¶ 34).

Plaintiff seeks injunctive relief and damages on behalf of himself and "[a]ll persons in the United States[,] who[,] from four years prior to the filing of the [Complaint] through class certification," received calls on their cellular phones from Defendant or its agents "using a prerecorded voice," (1) without prior consent, or (2) "for whom Defendant claims . . . [it]

obtained the person's consent or cell[ular] phone number in the same manner as Defendant

claims [it] . . . obtained Plaintiff's consent or cell[ular] phone number." (*Id.* ¶¶ 37, 46-50).

## II.  LEGAL STANDARD

"A federal court has subject matter jurisdiction over a cause of action only when it 'has

authority to adjudicate the cause' pressed in the complaint." *Arar v. Ashcroft*, 532 F.3d 157, 168

(2d Cir. 2008), *rev'd en banc on other grounds*, 585 F.3d 559 (2d Cir. 2009) (quoting *Sinochem*

*Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007)). "Determining the

existence of subject matter jurisdiction is a threshold inquiry, . . . and a claim is 'properly

dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks

the statutory or constitutional power to adjudicate it.'" *Id.* (quoting *Makarova v. United States*,

201 F.3d 110, 113 (2d Cir. 2000)).

Article III of the Constitution "limits the subject matter jurisdiction of federal courts to

actual 'cases' or 'controversies.'" *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir.

2012) (quoting U.S. Const. art. III, § 2, cl. 1); *see also Kokkonen v. Guardian Life Ins. Co. of*

*America*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction.").  In

addition, "[a]n act of [C]ongress repugnant to the [C]onstitution cannot become a law," and

"[t]he courts of the U[nited] States are bound to take notice of the [C]onstitution." *Marbury v.*

*Madison*, 5 U.S. 137, 138 (1803).  Therefore, where a law or statute is "unconstitutional and

void, [a court] acquire[s] no jurisdiction of the causes" of action thereunder. *See Ex parte*

*Siebold*, 100 U.S. 371, 377 (1880); *see also Montgomery v. Louisiana*, 577 U.S. 190, 202–03

(2016), *as revised* (Jan. 27, 2016).  Similarly, "once a statute has been declared unconstitutional,

the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid

'law of the United States' to enforce)." *United States v. Baucum*, 80 F.3d 539, 540–41 (D.C. Cir.

1996); *see also Baker v. Carr*, 369 U.S. 186, 198 (1962) (noting that "[i]n the instance of lack of jurisdiction the cause either does not 'arise under' the Federal Constitution, laws or treaties (or fall within one of the other enumerated categories of Art. III, s 2), or is not a 'case or controversy' within the meaning of that section; or the cause is not one described by any jurisdictional statute").

There are two types of motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"): (1) "*facial* challenge[s] based on the pleadings[;]" and (2) "*factual* challenge[s] based on extrinsic evidence." *Guadagno v. Wallack Ader Levithan Assoc.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996) (emphases in original). Where, as here, the Motion is a facial challenge and no facts are in dispute, "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon*, 752 F.3d at 243; *see also Rubinstein & Assocs., PLLC v. Entrepreneur Media, Inc.*, 20-CV-4173 (RPK) (ST), 2021 WL 3602998, at *3 (E.D.N.Y. Aug. 13, 2021). Both types of challenges require the plaintiff to "prove by a preponderance of the evidence that [subject matter jurisdiction] exists." *See Makarova*, 201 F.3d at 113; *see also Latino Quimica-Amtex S.A. v. Akzo Nobel Chemicals B.V.*, No. 03 Civ. 10312(HBDF), 2005 WL 2207017, at *4 (S.D.N.Y. Sept. 8, 2005).

## III.  DISCUSSION

Defendant argues that the Court lacks jurisdiction over the instant action pursuant to *Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335 (2020), wherein the Supreme Court declared unconstitutional 47 U.S.C. § 227(b)(1)(A)(iii), the subsection of the TCPA that forms the basis of Plaintiff's claims. (Docket Nos. 26 at 4-5, 6-14; 28 at 3-8; *see also* Docket No. 1 ¶ 45). Plaintiff responds that the Court retains jurisdiction because *Barr* did not invalidate the

entirety of § 227(b)(1)(A)(iii). (Docket No. 27 at 1-6).  Rather, the court in *Barr* found

unconstitutional and severed an exception to § 227(b)(1)(A)(iii) for government debt collectors

which is inapplicable to this lawsuit, thus leaving the Court's jurisdiction intact. (*Id.* at 1-2, 6-

20).  The Court agrees that because *Barr* excised the government debt exception from §

227(b)(1)(A)(iii) and Plaintiff's case is premised on the remainder of that provision, the Court

retains jurisdiction.

## A.  The TCPA

The TCPA bars "any person" from "mak[ing] any call . . . using any automatic telephone

dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . .

cellular telephone service . . . or any service for which the called party is charged for the call." 47

U.S.C. § 227(b)(1)(A)(iii).  This language, known as the "robocall restriction," "prohibit[s]

almost all robocalls to cell phones." *See Barr*, 140 S. Ct. at 2344.

The original TCPA was enacted in 1991. *See* Telephone Consumer Protection Act of

1991, Pub. L. No. 102-243, § 1462, 105 Stat. 2394 (1991) (codified as amended at 27 U.S.C. §

227, *et seq.*).  In 2015, however, Congress amended § 227(b)(1)(A)(iii) to except government

debt collectors from the robocall restriction (the "2015 Amendment"). *See* Bipartisan Budget Act

of 2015, Title III, Sec. 301, 129 Stat 584, 588 (2015).  The revised language provided, in relevant

part:

(b) Restrictions on use of automated telephone equipment

(1) Prohibitions

It shall be unlawful for any person within the United States, or any person outside the
United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior
express consent of the called party) using any automatic telephone dialing system or
an artificial or prerecorded voice—

. . .

> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, *unless such call is made solely to collect a debt owed to or guaranteed by the United States* . . .

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

**B.  *Barr***

In *Barr*, a group of political and nonprofit organizations argued that the 2015 Amendment's government debt exception violated the First Amendment by favoring debt collection speech over other categories of speech. *See* 140 S. Ct. 2335, 2345 (2020).  As relief, rather than severing the exception, the plaintiffs asked the Court to invalidate the entire robocall restriction.[2] *See id.* at 2345–46.

In a plurality opinion announced by Justice Kavanaugh, the Court held that the government debt exception was an unconstitutional content-based restriction on speech that failed strict scrutiny. *See id.* at 2343, 2346–47.  However, the Court refused to invalidate the whole robocall restriction, finding the government debt exception severable from § 227(b)(1)(A)(iii). *See id.* at 2348–56.  Under that rationale, the Court concluded that the unconstitutional portion of § 227(b)(1)(A)(iii) was "'a nullity' and 'void' when enacted, . . . [with] no effect on the original statute." *See id.* at 2353 (quoting *Frost v. Corp. Comm'n of Okla.*, 278 U.S. 515, 526–27 (1929)).  Justice Kavanaugh explained that this result comports with the Court's "strong presumption of severability," which preserves the democratic process and

---

[2] The U.S. District Court for the Eastern District of North Carolina initially found the robocall restriction constitutional. *See Am. Ass'n of Pol. Consultants v. Sessions*, 323 F. Supp. 3d 737, 747 (E.D.N.C. 2018).  The Court of Appeals for the Fourth Circuit vacated the judgment, holding that the restriction was unconstitutional. *See American Ass'n of Pol. Consultants, Inc. v. FCC*, 923 F.3d 159, 168, 172 (2019).  However, the Court of Appeals declined to invalidate the whole provision, choosing instead to sever the government debt exception and leave the rest of § 227(b)(1)(A)(iii) intact. *See id.* at 171.

separation of powers by "salvag[ing] rather than destroy[ing] the rest of the law passed by Congress and signed by the President." *See id.* at 2350.  In footnote 12, Justice Kavanaugh further stated:

> As the Government acknowledges, although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate. . . . On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.

*Id.* at 2355 n.12.  Chief Justice Roberts and Justice Alito joined Justice Kavanaugh's decision in full, and four other justices also concluded that the 2015 Amendment was severable from the rest of the TCPA.[3] *See id.* at 2342–44.

In a partial dissent joined by Justice Thomas, Justice Gorsuch opined that the appropriate remedy for the constitutional violation was an injunction "preventing [the entire robocall restriction's] enforcement against [the plaintiffs]." *See id.* at 2365 (Gorsuch, J., dissenting). Justice Gorsuch argued that because the plaintiffs "came to court asserting the right to speak, not a right to be free from other speakers," severance of the government debt exception did not address their injury. *See id.* at 2366.  He also expressed concern that the plurality's decision rendered otherwise-lawful conduct unlawful without proper procedural safeguards. *See id.*  In doing so, he rejected Justice Kavanaugh's "suggest[ion]" in footnote 12 that to address this due process problem, "the ban on government-debt collection calls . . . be applied only prospectively." *See id.*  Such selective protection of government debt collectors from past liability, he reasoned, "would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate." *See id.*

---

[3] Although Justices Breyer, Ginsburg, Kagan and Sotomayor disagreed with Justice Kavanaugh's First Amendment analysis, they concurred in the judgment with respect to severability. *See id.* at 2356–63.

### C.  Defendant's Motion

The parties dispute *Barr*'s ramifications for collectors of private debt, who, like Defendant, made robocalls after the 2015 Amendment but before *Barr* was decided. (*Compare* Docket Nos. 26 at 13-14; 28 at 6-8, *with* Docket No. 27 at 4, 9-10).  They also disagree on the meaning and precedential value of footnote 12. (*Compare* Docket Nos. 26 at 8; 28 at 6-7, *with* Docket No. 27 at 18-19).  Defendant argues that the robocall restriction is inapplicable to the calls at issue because *Barr* only severed the government debt exception prospectively. (Docket Nos. 26 at 7-14; 28 at 6-8).  Defendant further contends footnote 12 shields government debt collectors from liability for calls between the 2015 Amendment and the *Barr* district court's entry of final judgment, because to do otherwise would violate their due process rights. (Docket Nos. 26 at 8-9, 13-14; 28 at 4-6).  Since such a result unfairly favors government debt collectors over others, Defendant reasons, the only constitutionally appropriate application of *Barr* is to absolve non-government debt collectors of liability for calls during the same period. (Docket Nos. 26 at 9, 11-14; 28 at 5-8).  Defendant summarily dismisses as non-binding footnote 12's qualifying language reminding non-government debt collectors of the TCPA's continued application. (Docket No. 26 at 8; 28 at 6-7).

Plaintiff, however, maintains that regardless of *Barr*'s effect on calls by government debt collectors, the decision necessarily severed the government debt exception from the robocall restriction both prospectively and retroactively. (Docket No. 27 at 5-7, 10-20).  According to Plaintiff, this is the logical conclusion based on the law of severance and retroactivity, as well as footnote 12's explicit imposition of liability on "parties who made robocalls covered by the robocall restriction." (*Id.* at 8-10, 18); *see also Barr*, 140 S. Ct. at 2355 n.12.  Plaintiff also criticizes Defendant for relying on cases that found the entirety of § 227(b)(1)(A)(iii)

unconstitutional, when the *Barr* court explicitly rejected that conclusion.[4]  (Docket No. 27 at 13-19).  Thus, Plaintiff claims, because the severed version of § 227(b)(1)(A)(iii) stands and covers Defendant's conduct, this lawsuit must go forward. (*Id.* at 7-20).

The *Barr* decision, as well as traditional severability analysis, both support the conclusion that Defendant is subject to the remaining constitutional version of § 227(b)(1)(A)(iii).  Seven justices concluded that rather than invalidating the entirety of the TCPA, as the plaintiffs in *Barr* requested, the appropriate remedy for § 227(b)(1)(A)(iii)'s unconstitutional restriction of speech was severance of the government debt exception. *See* 140 S. Ct. at 2342–43, 2356–63. Defendant seems to argue that only three justices found such severance retroactive because only Justices Kavanaugh, Alito and Chief Justice Roberts joined the section of the plurality decision regarding severability. (*See* Docket Nos. 26 at 8-9; 28 at 4-5).  However, that argument ignores the fact that four concurring justices expressly endorsed the plurality's reasoning on severability. *See Barr*, 140 S. Ct. at 2356–63.

Defendant's argument is also inconsistent with longstanding precedent holding that the Supreme Court's interpretations of the law *always* apply retroactively, as does severance of

---

[4] Plaintiff mistakenly argues that these decisions are also "invalid" because they were issued without providing the Government notice and an opportunity to intervene. (Docket No. 27 at 14 n.2).  When the constitutionality of a statute is challenged by a party to a litigation between non-government entities, Rule 5.1 of the Federal Rules of Civil Procedure ("Rule 5.1") requires a court to "certify to the appropriate attorney general that a statute has been questioned" and provide the attorney general the opportunity to intervene. *See* Fed. R. Civ. P. 5.1(a)-(c).  The court "may not enter a final judgment holding the statute unconstitutional" until the attorney general intervenes, or "the time to [do so] . . . expires." *See* Fed. R. Civ. P. 5.1(c); *see also* 28 U.S.C. § 2403.  However, Rule 5.1 is inapplicable to the cases Defendant cites – as well as this litigation – as the Supreme Court already found the amended version § 227(b)(1)(A)(iii) unconstitutional in *Barr*.  Rather than the constitutionality of a statutory provision, the lawsuits in those cases and this one concern the proper interpretation of *Barr*'s ruling based on traditional principles of retroactivity, severability and *stare decisis*, none of which implicate the Constitution. *Cf. Johansen v. LoanDepot.com LLC*, No. 8:20-cv-00919-DOC (JDE), 2021 WL 669329, at *1–2 (C.D. Cal. Jan. 31, 2021) (noting Rule 5.1 notice of challenge to 47 U.S.C. § 227(c)(5), but not to 47 U.S.C. § 227 or 47 U.S.C. § 227(b)(1)(A)(iii), where defendant argued that *Barr* found the entire TCPA unconstitutional); *see also Anixter v. Home-Stake Prod. Co.*, 977 F.2d 1533, 1547 (10th Cir.), *on reh'g in part*, 977 F.2d 1549 (10th Cir. 1992) (citing *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529 (1991)); *Ash v. Dean Witter Reynolds, Inc.*, 806 F. Supp. 1473, 1478 & n.15 (E.D. Cal. 1992) (same); *Adler v. Berg Harmon Assocs.*, 790 F. Supp. 1235, 1243–44 (S.D.N.Y. 1992) (same).  For this reason, the Court is not required to certify any question to the attorney general in this case, nor was Defendant required to provide notice under Rule 5.1. (*See* Docket No. 26 at 5 n.1).

unconstitutional portions of a statute. *See Franklin v. Navient, Inc.*, No. 1:17-cv-1640-SB, 2021 WL 1535575, at *2–3 (D. Del. July 12, 2021).  Indeed, "[w]hen [the Supreme] Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule." *Harper v. Virginia Dep't of Tax'n*, 509 U.S. 86, 97 (1993) ("[W]e can scarcely permit 'the substantive law [to] shift and spring' according to 'the particular equities of [individual parties'] claims' of actual reliance on an old rule and of harm from a retroactive application of the new rule.") (quoting *Beam*, 501 U.S. at 543).[5]  Likewise, when the Supreme Court "construes a statute, it . . . explain[s] . . . what the statute has meant continuously since the date when it became law." *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 313 n.12 (1994).  Thus, when the Court deems a law unconstitutional, that law is "void, and is as no law" from the date of its passage. *See Ex parte Siebold*, 100 U.S. at 376; *see also Frost*, 278 U.S. at 526–27 (noting that when legislature passed unconstitutional amendment, the amendment was "a nullity and, therefore, powerless to work any change in the existing statute" such that the original "statute must stand as the only valid expression of the legislative intent").  This concept stems from *Marbury v. Madison*, the historic case wherein the Supreme Court determined that a court's only power is "to say what the law *is*," and thus, what it has always been, both before and after the

---

[5] Defendant claims that Plaintiff's reliance on *Harper* with respect to retroactivity is improper, and that *Harper* supports Defendant's fairness argument because one line reads: "Our approach to retroactivity heeds the admonition that '[t]he Court has no more constitutional authority in civil cases than in criminal cases to disregard current law or to treat similarly situated litigants differently.'" 509 U.S. at 97 (quoting *American Trucking Ass'ns, Inc. v. Smith*, 496 U.S. 167, 214 (1990) (Stevens, J., dissenting)); (*see also* Docket No. 28 at 7).  However, Defendant's description of that quotation is misleading and fails to appreciate its context.  Read in conjunction with *Harper*'s analysis supporting retroactivity, the quotation references the insupportable inequity of the opposite approach, *i.e.*, "selective application of new rules" only to litigants whose cases involve events postdating the announcement of such rules. *See* 509 U.S. at 96–97 (quoting *Griffith v. Kentucky*, 479 U.S. 314, 323 (1987)) (internal quotation marks omitted).  Thus, the quotation has nothing to do with the fairness concerns cited by Defendant and Justice Gorsuch's dissent. *See Barr*, 140 S. Ct. at 2366 (Gorsuch, J., dissenting); (Docket No. 28 at 7).

court's decision. *See* 5 U.S. at 177 (emphasis added); *see also Franklin*, 2021 WL 1535575, at

*2.  Under that rationale, the *Marbury* court excised an unconstitutional portion of the Judiciary

Act of 1789, leaving the rest of the Act intact. *See* 5 U.S. at 177–80.

The *Barr* plurality echoed this logic as support for severability.  Citing *Marbury* and

*Frost*, the plurality found that "an unconstitutional statutory amendment 'is a nullity' and 'void'

*when enacted*, and for that reason has no effect on the original statute." *See Barr*, 140 S. Ct. at

2353 (quoting *Frost*, 278 U.S. at 526–27) (emphasis added).  Thus, the plurality explained,

severance allows courts to excise the unconstitutional portions of a statute without overriding

Congress's original intent and legislating from the bench. *See id.* at 2351, 2355–56; *see also*

*Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2211 (2020).  The corollary to this

reasoning is that severance of an unconstitutional amendment — such as the 2015 Amendment

— merely declares what the law meant even before severance took place, because the

unconstitutional amendment was a "nullity" all along. *See Barr*, 140 S. Ct. at 2353 (quoting

*Frost*, 278 U.S. at 527) (internal quotation marks omitted).  By concluding that the government

debt exception was severable, therefore, Chief Justice Roberts and Justices Kavanaugh, Alito,

Sotomayor, Breyer, Kagan and Ginsburg necessarily *also* determined that the remaining version

of § 227(b)(1)(A)(iii) remains enforceable now and retroactively.  Numerous district courts

throughout the United States have arrived at this same conclusion. *See, e.g.*, *Cano v. Assured*

*Auto Grp.*, No. 3:20-CV-3501-G, 2021 WL 3036933, at *5–9 (N.D. Tex. July 19, 2021);

*Franklin*, 2021 WL 1535575, at *3; *Moody v. Synchrony Bank*, No. 5:20-cv-61 (MTT), 2021 WL

1153036, at *2–7 (M.D. Ga. Mar. 26, 2021); *Massaro v. Beyond Meat, Inc.*, No. 3:20-cv-00510-

AJB-MSB, 2021 WL 948805, at *7–9 (S.D. Cal. Mar. 12, 2021); *DiStasio v. Edible*

*Arrangements, LLC*, No. 3:16-cv-00538 (VLB), 2021 WL 1087499, at *4 (D. Conn. Feb. 1,

2021); *Shen v. Tricolor California Auto Grp., LLC*, No. CV 20-7419 PA (AGRx), 2020 WL
7705888, at *4 (C.D. Cal. Dec. 17, 2020), *motion to certify appeal denied*, 2021 WL 1153361
(C.D. Cal. Feb. 11, 2021).

Defendant essentially asks this Court to decline to enforce the entirety of §
227(b)(1)(A)(iii), when the Supreme Court rejected that approach, and only two justices
supported it. (Docket No. 26 at 8-9).  Defendant also ignores footnote 12's clear language stating
that the Supreme Court's "decision . . . does not negate the liability of parties who made
robocalls covered by the robocall restriction." *Barr*, 140 S. Ct. at 2355 n.12.  This language is
consistent with the severability doctrines discussed above.  Although courts have debated the
extent to which this specific portion of the opinion is binding, *see, e.g.*, *McCurley v. Royal Sea
Cruises, Inc.*, No. 17-cv-00986-BAS-AGS, 2021 WL 288164, at *3 (S.D. Cal. Jan. 28, 2021);
*Creasy v. Charter Commc'ns, Inc.*, 489 F. Supp. 3d 499, 503 (E.D. La. 2020), *judgment entered*,
No. CV 20-1199, 2020 WL 7646640 (E.D. La. Dec. 23, 2020), even if it is *dicta*, "it must be
given considerable weight and cannot be ignored in the resolution of a close question." *See
United States v. Bell*, 524 F.2d 202, 206 (2d Cir. 1975).  The Court finds this language
persuasive because it comports with the above reasoning supporting severability and was
endorsed by the majority. *See Shen*, 2020 WL 7705888, at *4; *see also Van Connor v. One Life
Am., Inc.*, No. 6:19-cv-03283-DCC, 2021 WL 2667063, at *4 (D.S.C. June 29, 2021) (noting that
"a total of four additional Justices concurred in the judgment with respect to severability and
none indicated any disagreement with that aspect of the plurality's analysis").  To ignore it and
shield from liability all debt collection robocalls between 2015 and *Barr*'s final judgment, would
impermissibly undermine Congress's long-standing intent to restrict such calls, and veer into the
realm of judicial policymaking. *See Barr*, 140 S. Ct. at 2355–56.

The Court also rejects Defendant's argument that out of fairness, the Court cannot enforce the severed version of the restriction because of footnote 12's language that purports to except government debt collectors from liability for conduct between 2015 and *Barr*'s final judgment. (Docket Nos. 26 at 9; 28 at 6); *see also Barr*, 140 S. Ct. at 140 S. Ct. at 2355 n.12. Defendant's contention is unpersuasive for several reasons. First, a number of courts have concluded that the portion of footnote 12 on which Defendant relies is only a "suggestion," and thus, does not constitute "clear or binding guidance on the issue." *See Trujillo v. Free Energy Sav. Co., LLC*, No. 5:19-cv-02072-MCS-SP, 2020 WL 8184336, at *5 (C.D. Cal. Dec. 21, 2020), *motion to certify appeal denied*, 2021 WL 757023 (C.D. Cal. Feb. 25, 2021); *see also Moody*, 2021 WL 1153036, at *6. The text of the *Barr* decision itself comports with this conclusion. *See* 140 S. Ct. at 2355 n.12 ("[N]o one *should* be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case.") (emphasis added); *id.* at 2366 (describing proposed relief absolving government debt collectors of retroactive liability as a "suggest[ion]") (Gorsuch, J., dissenting).

Second, the language in footnote 12 referenced by Defendant expressly applies to government debt collectors. *See Barr*, 140 S. Ct. at 2355 n.12. However, Defendant is decidedly not a government debt collector. The rest of footnote 12 makes clear that Defendant's conduct is covered by the remainder of the statute.[6] *See Stoutt v. Travis Credit Union*, 512 F. Supp. 3d 1048, 1054 n.2 (E.D. Cal. 2021), *motion to certify appeal granted*, No. 2:20-CV-01280 WBS

---

[6] Moreover, relying on *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749 (1995), at least one district court has determined that retroactive application of the severed TCPA does not pose a due process problem because "[c]laims of reliance" on old legal rules "are . . . 'insufficient to deny retroactive application of a new' judicial interpretation." *See Franklin*, 2021 WL 1535575, at *3 (quoting *Reynoldsville*, 514 U.S. at 753); *see also Hawknet, Ltd. v. Overseas Shipping Agencies*, 590 F.3d 87, 91 n.7 (2d Cir. 2009) ("[A] reliance interest is insufficient to overcome the presumption of retroactivity.").

AC, 2021 WL 1143612 (E.D. Cal. Mar. 25, 2021) ("The due process question should properly be resolved in a different case."); *see also DeStasio*, 2021 WL 1087499, at *4; *Trujillo*, 2020 WL 8184336, at *4.

Third, Defendant's proposed solution is inconsistent with the plurality and concurring opinions regarding severability.[7]  Indeed, Defendant's fairness concerns stem directly from Justice Gorsuch's dissent, which only Justice Thomas joined. *See Barr*, 140 S. Ct. at 2365–66 (Gorsuch, J., dissenting).  Thus, these concerns do not represent the views of the *Barr* plurality. *See Pers. v. Tech. Educ. Servs., Inc.*, No. 1:19-cv-03735-SDG, 2021 WL 2336533, at *4 (N.D. Ga. June 8, 2021); *Shen*, 2020 WL 7705888, at *4.  Whereas the rest of the *Barr* court expressly severed the government debt collection exception alone — leaving the rest of § 227(b)(1)(A)(iii)'s restrictions intact — Defendant's proposal to absolve non-government debt collectors from those very restrictions would effectuate the opposite result.  As the plurality noted, "[c]onstitutional litigation is not a game of gotcha against Congress, where litigants can ride a discrete constitutional flaw in a statute to take down the whole, otherwise constitutional statute." *Barr*, 140 S. Ct. at 2351.  However, that is exactly what Defendant is attempting to do.

Defendant relies on three non-binding district court cases from outside this Circuit, none of which acknowledge the retroactive effect of Supreme Court decisions or the *Barr* court's express intent to preserve the non-severed portions of the robocall restriction. (*See* Docket Nos. 26 at 10-12; 28 at 6).  As a result, the Court respectfully declines to adopt their reasoning.  For example, *Creasy v. Charter Communications, Inc.* determined that footnote 12 constitutes "passing Supreme Court dicta of no precedential force" and "the *entirety* of the pre-severance

---

[7] It is also inconsistent with the TCPA's severability clause, which reflects that Congress intended to preserve the rest of the statute if any portions thereof are held to be invalid. *See Barr*, 140 S. Ct. at 2352–53; 47 U.S.C. § 608.

version of § 227(b)(1)(A)(iii) *is* void because it *itself* was repugnant to the Constitution before the Supreme Court restored it to constitutional health in AAPC." *See* 489 F. Supp. 3d at 503, 507 (emphases in original).  However, that finding contradicts the Supreme Court's refusal to invalidate the entirety of the TCPA, and "comes closer to adopting the view of the opinion written by Justice Gorsuch and joined by Justice Thomas, than it does to adopting the view of Justice Kavanaugh's plurality opinion and the concurrences in the judgment on severability authored by Justices Sotomayor and Breyer." *See Shen*, 2020 WL 7705888, at *4.  The *Creasy* court also failed to explain how its rationale comports with the *Frost* and *Harper* framework regarding retroactivity set forth above. *See Trujillo*, 2020 WL 8184336, at *5.  The same is true of *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, No. 5:20-cv-38-Oc-30PRL, 2020 WL 7346536 (M.D. Fla. Dec. 11, 2020).  Moreover, the judge who issued *Hussain* later "depart[ed] from [that] . . . opinion," denying a nearly identical motion to dismiss by a private debt collector due to the robust precedent finding that such debt collectors continue to face liability after *Barr*. *See Boisvert v. Carnival Corp.*, No. 8:20-cv-2076-30SPF, 2021 WL 1329079, at *2 (M.D. Fla. Mar. 12, 2021) ("[A]s stated further above, every court to analyze this issue since *Hussain* has concluded that the TCPA remains valid. The Court, having the benefit now of reading all of these cases, agrees with this majority view.").

    For similar reasons, the Court cannot rely on *Lindenbaum v. Realgy, LLC*, 497 F. Supp. 3d 290 (N.D. Ohio 2020), Defendant's third case.  Like *Creasy* and *Hussain*, *Lindenbaum* disregarded footnote 12's language on the grounds that it is *dicta* and found the severed version of the TCPA actionable against debt collectors "who made robocalls covered by the robocall restriction." *See id.* at 295 (quoting *Barr*, 140 S. Ct. at 2355 n.12) (internal quotation marks omitted).  *Lindenbaum* also distinguished *Harper* on the grounds that severance is a "forward-

looking fix" that cannot remedy the former TCPA's "past wrong" of unconstitutionally restricting speech. *See Lindenbaum*, 497 F. Supp. 3d at 297.  In doing so, however, the *Lindenbaum* court rejected, without explanation, *Barr*'s conclusion that under *Frost*, an unconstitutional statute is "'void' when enacted, . . . *[with] no effect on the original statute.*" *See Barr*, 140 S. Ct. at 2353 (quoting *Frost*, 278 U.S. at 526–27) (emphasis added); *Lindenbaum*, 497 F. Supp. 3d at 296–97.  Instead, the court relied on a non-binding Federal Circuit concurrence issued before *Barr*, *see Lindenbaum*, 497 F. Supp. 3d at 296–97 (citing *Arthrex, Inc. v. Smith & Nephew, Inc.*, 953 F.3d 760 (Fed. Cir. 2020)), that has since been criticized for its departure from the above-mentioned precedent finding judicial decisions interpreting a statute inherently retroactive, *see Bedgear, LLC v. Fredman Bros. Furniture Co.*, 783 F. App'x 1029, 1031–34 (Fed. Cir. 2019), *cert. dismissed sub nom. Fredman Bros. Furniture Co. v. Bedgear, LLC*, No. (R46-34), 2021 WL 2908899 (U.S. June 23, 2021) (Dyk, J., concurring).  Because *Lindenbaum* overlooked this precedent and did not sufficiently address footnote 12, it is not persuasive.

Because the remainder of § 227(b)(1)(A)(iii) applies retroactively, the statutory provision on which Plaintiff's action is based is constitutional. *See Frost*, 278 U.S. at 526–27.  Therefore, the Court retains jurisdiction. *See Ex parte Siebold*, 100 U.S. at 377.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is denied.

The Clerk of Court is respectfully requested to terminate the pending Motion (Docket No. 26).

Dated:    August 31, 2021
          White Plains, New York

                                    **SO ORDERED:**


                                    _____
                                    JUDITH C. McCARTHY
                                    United States Magistrate Judge